**UNITED STATES, Appellee,**

**v.**

**Private E–1 Fredrick G. HAYWOOD, SSN 461–31–1212, United States Army, Appellant.**

**CM 443802.**

U.S. Army Court of Military Review.

30 May 1984.

Captain Donna Chapin Maizel, JAGC, argued the cause for the appellant. With her on the pleadings were Lieutenant Colonel William P. Heaston, JAGC, and Major Edwin D. Selby, JAGC.

Captain Robert C. Erickson, JAGC, argued the cause for the appellee. With him on the pleadings were Colonel James Kucera, JAGC, Lieutenant Colonel John T. Edwards, JAGC, and Major Patrick M. Flachs, JAGC.

Before HANSEN, SU–BROWN and BADAMI, Appellate Military Judges.

## OPINION OF THE COURT

SU–BROWN, Judge:

Contrary to his pleas, appellant was tried by a military judge sitting as a general court-martial and convicted of larceny, willful damage to military property, and three specifications of assault with a dangerous weapon, in violation of Articles 121, 108 and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 921, 908 and 928 (1976). He was sentenced to a dishonorable discharge, confinement at hard labor for 15 months, and forfeiture of all pay and allowances.

The facts in this case focus upon appellant's use of a fragmentation grenade against a noncommissioned officer in his company. Ordered to stay in the company area by Staff Sergeant (SSG) Rothrock, appellant became very upset. He boiled with resentment for several hours, muttering and complaining. Retrieving a grenade he had secreted several months previous, he placed the grenade underneath a concrete sidewalk outside SSG Rothrock's barracks and pulled the pin. The ensuing explosion damaged the building, but did not inflict any injuries to the occupants of the building.

Appellant raised the defense of insanity at trial, and now contends that the military judge erred in holding appellant mentally responsible for his actions.

Prior to trial, appellant was examined by the Division Psychiatrist, Lieutenant Colonel (LTC) Kehoe. Designated as a medical board to inquire into appellant's mental condition, LTC Kehoe testified at trial as to his findings during the defense's case-in-chief. In his judgment, appellant suffered from a mental disease or defect called "borderline personality disorder" which included "brief reactive psychosis." According to LTC Kehoe, this diagnosis is used to describe people who have pathological personalities but also experience psychotic episodes. In his opinion, appellant experienced a psychotic episode on the day of the offense due to his disorganized emotional state stemming from a "personality disintegration." As a result, appellant came under "a delusion" that SGT Rothrock was the source of his disintegration. In his opinion, appellant lacked "substantial capacity to conform his conduct to the requirements of the law." However, appellant did not lack substantial capacity to appreciate the criminality of his conduct. The government did not present evidence to rebut LTC Kehoe's testimony. Instead, the government argued that the diagnosis constituted a "personality disorder" which is not sufficient to amount to a "mental disease, defect or derangement."

After the announcement of findings by the military judge, the trial defense counsel asked for special findings. The judge agreed, and announced that although the defense of insanity was raised, "based upon the definition as provided in *Cortes-Crespo* . . . . I have rejected the defense of insanity . . . ." The military judge based his conclusion upon the premise that a brief psychotic episode which results from a borderline personality disorder is not a "mental disease or defect in a legal sense." After making these comments, the military judge opined that "this may be a case where they [the Court of Military Appeals] make a greater definition of what [a] mental disease or defect is."

■ In *United States v. Cortes-Crespo*, 13 M.J. 420, 422 (C.M.A.1982), the Court specifically declined to define the terms "mental disease or defect" other than by "use of the terms themselves." *See Unit-*

*ed States v. Cortes-Crespo*, 9 M.J. 717, 725 (A.C.M.R.1980). Without a precise definition, the focus must be on the impact of the mental disorder upon the mental processes of the accused. We agree with the government counsel's argument in their well written pleadings that it is "essentially irrelevant how the diagnosis is framed by the witness ... [w]hat is important is the testimony of the expert concerning the effect of the diagnosis upon the accused's behavior at the time of the offense...."

■ At trial, the military judge based his findings upon the threshold question as to whether appellant had a mental disease or defect at the time of the offense. *See United States v. Frederick*, 3 M.J. 230 (C.M.A.1977); *United States v. Farmer*, 6 M.J. 897 (A.C.M.R.1979), *pet. denied* 7 M.J. 75 (C.M.A.1979). While so doing, the military judge erred in excluding by definition a "borderline personality disorder" from consideration as a mental disease or defect. While the medical expert's diagnostic opinion that appellant suffered from a mental disease or defect is not controlling in a court of law, neither may it be summarily rejected on a definitional basis. The focus of the judge's analysis should have been upon the impact of the diagnosed disorder upon appellant's mental or emotional processes and behavior controls at the time of the offense and not upon the medical terminology employed in describing the diagnosis itself. *United States v. Cortes-Crespo*, 9 M.J. at 725.

■ The unrebutted and unimpeached testimony of LTC Kehoe at trial indicates that due to the diagnosed mental disorder, appellant lacked the substantial capacity to conform his conduct to the requirements of the law. We must attach great weight to his testimony, in view of the nature of his testimony and the painstaking manner in which LTC Kehoe arrived at his opinion, which included ten hours of direct interview with appellant and the administration of a battery of psychological tests, plus independent evidence of appellant's abnormal behavior at the time and shortly after the offense. *United States v. Martinez*, 12 M.J. 801, 809 (N.M.C.M.R.1981), *pet. denied* 13 M.J. 232 (C.M.A.1982). At the very least, this testimony raised the issue of appellant's sanity. Consequently, the burden shifted to the government to prove appellant's mental responsibility beyond a reasonable doubt. Paragraph 122*a*, Manual for Courts-Martial, United States, 1969 (Revised edition); *United States v. Bush*, 14 M.J. 900, 902 (N.M.C.M.R.1982). This the government failed to do.

We hold that the military judge committed reversible error by categorically excluding the diagnosis of "borderline personality disorder" with episodic psychosis from consideration as a "mental disease or defect." Particularly in view of LTC Kehoe's opinion that appellant experienced a psychotic episode at the time of the offense. This condition is sufficient to raise the issue of appellant's sanity without reaching the question of whether a "borderline personality disorder" is a "mental disease or defect in a legal sense." However, we also note that there is some authority for the proposition that a "borderline personality disorder" is a mental disease or defect. *United States v. Cleveland*, 6 M.J. 939 (A.C.M.R. 1979), *pet. denied* 7 M.J. 135 (CMA 1979). We are convinced that a diagnosed personality disorder may not be categorically excluded from the legal definition of "mental disease or defect." *United States v. Walker*, 14 M.J. 824, 829 (A.C.M.R.1982), *pet. denied* 15 M.J. 397 (C.M.A.1983).

In view of the military judge's failure to apply the correct legal standard in his consideration of the defense of insanity, we will order a rehearing. *See United States v. Leech*, 18 U.S.C.M.A. 129, 39 C.M.R. 129 (1969); *United States v. Green*, 42 C.M.R. 462 (A.C.M.R.1970).

We have reviewed the remaining assignments of error and find them lacking in merit.

The findings of guilty and the sentence are set aside. A rehearing may be ordered by the same or a different convening authority.

Chief Judge HANSEN and Judge BADA-MI concur.