UNITED STATES, Appellee,

v.

Janet M. TAYLOR, Second Lieutenant
U.S. Army, Appellant.

No. 48,601.

CM 443276.

U.S. Court of Military Appeals.

Feb. 24, 1987.

For Appellant: Captain David W. Sorensen (argued); Colonel William G. Eckhardt, Lieutenant Colonel William P. Heaston, Captain Harry L. Williams, Jr., Captain Robert S. Johnson, Jr. (on brief); Colonel Brooks B. LaGrua, Major Eric T. Franzen, Captain Bernard P. Ingold.

For Appellee: Major Byron J. Braun (argued); Colonel James Kucera, Lieutenant Colonel Adrian J. Gravelle, Major Thomas J. Leclair, Captain Andrew D. Stewart, Captain Richard J. Fadgen (on brief); Lieutenant Colonel John T. Edwards.

*Opinion of the Court*

EVERETT, Chief Judge:

A general court-martial tried appellant in Darmstadt, Federal Republic of Germany, on charges that she had made a false official statement, committed extortion, sworn falsely, and solicited the larceny of $400.00, as well as that she had been guilty of conduct unbecoming an officer, in violation of Articles 107, 127, 134, and 133, Uniform Code of Military Justice, 10 U.S.C. §§ 907, 927, 934, and 933, respectively. The unbecoming conduct was alleged in four specifications, each of which corresponded to one of the four offenses alleged under other punitive articles but contained the additional word "dishonorably." Appellant pleaded not guilty to the charge of solicitation and to the corresponding specification of unbecoming conduct; but she pleaded guilty to the remaining charges. The court-martial found her guilty of all the charges and sentenced her to dismissal, confinement for 1 year, and total forfeitures. The convening authority approved these results.

The Court of Military Review concluded that the military judge "erred by failing to instruct the court members that the offense of solicitation under Article 134 is a specific intent crime." Unpublished opinion at 1. However, it "affirm[ed] the lesser, general intent offense of wrongfully communicating language that requested another to commit a criminal offense, a simple disorder under Article 134." *Id.* at 1–2. The related specification of unbecoming conduct and the other findings of guilty were affirmed without change. Upon reassessment of the sentence on the basis of the error it had noted, the Court of Military Review affirmed that sentence.

We granted review on three issues raised by appellate defense counsel:

### I

WHETHER THE ARMY COURT OF MILITARY REVIEW ERRED WHEN IT FOUND THAT APPELLANT COULD BE FOUND GUILTY OF A SIMPLE DISORDER BY WRONGFULLY COMMUNICATING A REQUEST TO COMMIT AN OFFENSE, WHEN IT CONCLUDED THAT APPELLANT'S CONVICTION OF SOLICITATION COULD NOT STAND IN LIGHT OF THE FAILURE OF THE MILITARY JUDGE TO INSTRUCT THAT THE APPELLANT SPECIFICALLY INTENDED THAT THE OFFENSE SOLICITED BE COMMITTED.

### II

WHETHER THE ARMY COURT OF MILITARY REVIEW ERRED BY AFFIRMING THE FINDINGS AS TO SPECIFICATION 1 OF CHARGE V (CONDUCT UNBECOMING AN OFFICER BY SOLICITING 2LT MONTANO TO COMMIT THE OFFENSE OF LARCENY) SINCE THE ARMY COURT OF MILITARY REVIEW AGREED THAT THE MILITARY JUDGE ERRED BY NOT INSTRUCTING THE COURT MEMBERS THAT THE OFFENSE OF SOLICITATION IS A SPECIFIC INTENT CRIME.

### III

WHETHER SPECIFICATIONS 1, 2, 3, AND 4 OF CHARGE V (CONDUCT UN-

BECOMING AN OFFICER) WERE MULTIPLICIOUS FOR FINDINGS WITH CHARGE I AND ITS SPECIFICATION (WRONGFUL SOLICITATION); CHARGE II AND ITS SPECIFICATION (MAKING A FALSE OFFICIAL STATEMENT); CHARGE III AND ITS SPECIFICATION (EXTORTION) AND CHARGE IV AND ITS SPECIFICATION (FALSE SWEARING) SINCE THE LANGUAGE OF THE FORMER SPECIFICATIONS DUPLICATES THE LANGUAGE OF THE SUBSTANTIVE CHARGES AND SPECIFICATIONS.

## I

Appellant attempted to obtain money by threatening a fellow officer, Lieutenant Lawrence Montano, who, as one of his duties, maintained a unit fund of German and United States currency for use as a troop banking facility. On October 2, 1981, Montano mistakenly left the box unsecured on appellant's desk while he was away from the unit. Apparently, appellant discovered the box and decided that she would ask him to return a $400.00 check she had written, which Montano had cashed for her from the unit fund. To increase the likelihood that her request would be granted, appellant had the Charge of Quarters (CQ), Private Michael Goodman, prepare two CQ logs—one indicating that appellant had found the box of currency unsecured and the other omitting that fact. Thereafter, appellant approached Montano and remarked that, if she reported her discovery of the unsecured box, his military career would come to a quick end. She asked him for $400.00 to purchase her silence.

Montano refused to give her the money. Thereupon, she destroyed the log which contained no recital that the fund had been found unsecured, and she reported to the commander that she had found the box of currency unlocked. Later, she lied under oath to a CID agent who questioned her about these events.

## II

### A

Early in this Court's history the concept of preemption was applied in *United States v. Norris*, 2 U.S.C.M.A. 236, 8 C.M.R. 36 (1953). There, the accused had been charged with larceny, in violation of Article 121, UCMJ, 10 U.S.C. § 921, but was convicted of having wrongfully taken the property, in violation of Article 134. The Court noted that Article 121 prohibited larceny and the lesser-included offense of wrongful appropriation, which also required specific intent, but that neither this article nor any other punitive article purported to prohibit any lesser offense of criminal conversion. The Court perceived a danger in allowing Article 134 to be used as a basis for punishing conduct which was similar to that proscribed by specific punitive articles but which lacked some element required by those articles. As we observed:

> [T]here is scarcely an irregular or improper act conceivable which may not be regarded as in some indirect or remote sense prejudicing military discipline under Article 134.... We cannot grant to the services unlimited authority to eliminate vital elements from common law crimes and offenses expressly defined by Congress and permit the remaining elements to be punished as an offense under Article 134.

*Id.* at 239, 8 C.M.R. at 39.

Although *Norris* dealt with preemption of conduct similar to that which was covered by a specific punitive article, the same doctrine was later applied to the creation of new, lesser-included offenses when the principal offense was itself alleged as a violation of Article 134. *United States v. Manos*, 8 U.S.C.M.A. 734, 25 C.M.R. 238 (1958); *United States v. Downard*, 6 U.S.C.M.A. 538, 20 C.M.R. 254 (1955). Admittedly, our precedents do not provide a "bright line" test for determining when preemption should be applied.[1] However, we have never repudiated the preemption doctrine, which rests on the well-recognized

---

1. For example, we have allowed prosecution for negligent homicide, even though this offense is

not prohibited in either of the two punitive articles (Arts. 118 and 119, Uniform Code of

principle of statutory interpretation that if the legislature has explicitly prohibited certain conduct, then it did not intend also to prohibit other conduct which, though similar, does not meet the statutory requirements for criminal liability.[2]

### B

Article 82, UCMJ, 10 U.S.C. § 882, deals with solicitation. However, it only punishes someone "who solicits or advises another or others to desert" or to commit mutiny, sedition, or misbehavior before the enemy. *See also* Arts. 85, 94, and 99, UCMJ, 10 U.S.C. §§ 885, 894, and 899, respectively; App. 6(c), forms 4 and 5, Manual for Courts-Martial, United States, 1969 (Revised edition). Although Congress only explicitly prohibited solicitation to commit four specified offenses, this Court has never applied the doctrine of preemption to preclude prosecutions under Article 134 for solicitation to commit other offenses. *Cf. United States v. Isbell,* 1 U.S.C.M.A. 131, 2 C.M.R. 37 (1952). Thus, in the discussion of "solicitation," as proscribed by Article 82, the 1951 and 1969 Manuals for Courts-Martial specifically noted that "[s]olicitation to commit offenses other than violations of the articles enumerated in this article may be charged as violations of Article 134." Para. 161, Manual for Courts-Martial, United States, 1951; para. 161, 1969 Manual, *supra.*

The Table of Maximum Punishments, paragraph 127c, 1951 Manual, *supra,* contained no provision for solicitations that were not within the purview of Article 82; and apparently it contemplated that the maximum punishment would be that for service-discrediting disorderly conduct—namely, 4 months' confinement and forfeiture of two-thirds pay per month for 4 months. The Table of Maximum Punishments, paragraph 127c n. 7, 1969 Manual, *supra,* stated that

> [u]nless otherwise provided in the Table, any person subject to the Code

who is found guilty of soliciting or inducing another person to commit an offense which, if committed by one subject to the Code, would be punishable under this Table, shall be subject to the maximum punishment authorized for the offense solicited or induced, except that in no case shall the death penalty be imposed nor shall the period of confinement in any case, including offenses for which life imprisonment may be adjudged, exceed 5 years.

■ Whether prosecuted under Article 82 or 134, solicitation is a specific-intent crime. *United States v. Mitchell,* 15 M.J. 214 (C.M.A.1983). Neither the 1951 Manual nor the 1969 Manual, the latter of which was in effect when appellant was tried, contains a reference to any lesser-included offense which might not require proof of specific intent. However, the 1984 Manual does specifically state that soliciting another to commit an offense under Article 134 has a lesser-included offense of "[r]equesting another to commit an offense, wrongful communication of language." Part IV, para. 105c, Manual for Courts-Martial, United States, 1984. In turn, the revised Maximum Punishment Chart suggests that the maximum punishment for this lesser offense would be 4 months' confinement and forfeiture of two-thirds pay per month for 4 months—this being the same maximum punishment authorized for disorderly conduct under such circumstances as to bring discredit on the armed forces. *See* App. 12, p. A12–8, 1984 Manual, *supra* (change 2). The Manual provisions for the lesser-included offense are based on the Court of Military Review decision in *United States v. Benton,* 7 M.J. 606 (N.C.M.R.1979), *pet. denied,* 8 M.J. 227 (1980). *See* Drafters' Analysis to para. 105, App. 21, 1984 Manual, *supra.*

■ Developments since the Code was enacted reveal a continuing expansion of criminal liability under Article 134. While

---

Military Justice, 10 U.S.C. § 918 and 919, respectively) which deal specifically with homicide offenses. *United States v. Kick,* 7 M.J. 82 (C.M.A.1979).

**2.** The applicable Latin maxim is *inclusio unius, exclusio alterius.* For a similar interpretation of congressional intent in another context, *see United States v. Irvin,* 21 M.J. 184, 188 (C.M.A. 1986).

we believe that the scope of the offense of solicitation is not limited to the offenses listed in Article 82 and that other solicitations can be prosecuted under Article 134, we are convinced that the creation of a lesser-included offense not requiring specific intent flies in the face of the preemption doctrine. Indeed, when this Court held in *United States v. Mitchell, supra,* that solicitation requires specific intent, it did not affirm any lesser-included offense based on "a serious request or advice to commit" the offense named in the specification. 15 M.J. at 217. *See* 7 M.J. at 609. Instead, we dismissed the charge. The same relief should be granted in this case.

### III

The Court of Military Review failed to take any corrective action with respect to the finding that appellant was guilty of unbecoming conduct by soliciting Lieutenant Montano to commit larceny. Yet this finding was subject to the same instructional error as the finding of guilty under Article 134; and so logically it would seem to have required an identical modification of the finding.

In this instance, however, the modification would not require dismissal of the charge. An officer may be charged under Article 133 for conduct which may not constitute a violation of other provisions of the Code. The test is whether the conduct has fallen below the standards established for officers. *United States v. Giordano,* 15 U.S.C.M.A. 163, 35 C.M.R. 135 (1964). Article 133 is not subject to preemption by other punitive articles. Thus, an officer's request that another person commit an offense can constitute an Article 133 violation, even though she entertained no specific intent that the offense be committed by the person to whom the request was made.

The maximum confinement imposable on an officer can be no greater than that prescribed for enlisted members. *See* para. 126*d,* 1969 Manual, *supra.* In the

present context, it would appear that the maximum punishment to be applied would be that imposable for a simple disorder—namely, 4 months' confinement and forfeiture of two-thirds pay per month for 4 months. However, the military judge, in instructing the court members, indicated that the maximum confinement imposable for appellant's unbecoming conduct committed by soliciting the larceny was 5 years.[3] Clearly, this was error. As a result of this error, the judge mistakenly computed the aggregate confinement imposable as 12 years when, if correctly calculated, the maximum confinement would have been 7 years and 4 months:

### IV

In *United States v. Timberlake,* 18 M.J. 371 (C.M.A.1984), we held that an officer cannot be convicted both of a substantive crime and of unbecoming conduct which consists of the commission of that crime. Accordingly, the findings of guilty under Articles 107, 127, and 134 cannot coexist here with the parallel findings predicated on the violation of Article 133. Only the latter findings should be affirmed.

### V

The decision of the United States Army Court of Military Review is reversed as to Charges I, II, III, IV, and their specifications, and the sentence. The findings of guilty thereon are set aside and those specifications and Charges are dismissed. Specification 1 of Charge V is amended by substituting the words "communicate to" for the word "solicit" and adding the words "a request" before the words "to steal." The decision of the court below as to specifications 1 (as amended), 2, 3, and 4 of Charge V is affirmed. The record of trial is returned to the Judge Advocate General of the Army for remand to that court for reassessment of the sentence based on the affirmed findings of guilty.

Judge COX concurs.

Judge SULLIVAN did not participate.

---

**3.** He instructed that the Article 133 offenses were multiplicious for sentencing with the corresponding offenses alleged under other puni-

tive articles. Then, he advised that 5 years' confinement was the maximum imposable for solicitation of the larceny.